UNITED STATES BANKRUPTCY COURT

MIDDLE DISTRICT OF PENNSYLVANIA

In re:                            :
                                      **5:16-bk-3073** JJT
**JESUS JOSE PALMERONI** a/k/a    :
Joseph Palmeroni d/b/a/                Chapter 13
JJP Consulting, LLC               :

                    Debtor         :


# DEBTOR'S SUPPLEMENTAL MEMORANDUM

**ROBERT A. VORT**
2 University Plaza
Hackensack, New Jersey 07601
201-342-9501
rvort@vortlaw.com
Attorney for Debtor

## N.V.E. HAS SHOWN NO EXCUSABLE NEGLECT

Petitioner Jesus Jose Palmeroni ("Palmeroni") filed an emergency petition for bankruptcy on July 27, 2016. On August 6, 2016, Robert A Vort, Palmeroni's attorney in a lawsuit pending in the District of New Jersey, filed a notice of bankruptcy with the District Court. By filing the notice of bankruptcy with the District Court, notice was automatically provided by CM/ECF to counsel for N.V.E. of Palmeroni's bankruptcy.

Notice was also provided of the October 26, 2016 deadline for filing complaints to declare claims non-dischargeable. On September 23, 2016 Peter Erdely, Esq., entered an appearance in this proceeding on behalf of N.V.E.. On September 30, 2016 Erdele objected to confirmation of a plan and filed a motion for relief from the automatic stay on behalf of N.V.E. His objection stated that N.V.E. intended to file a complaint to declare the debt non-dischargeable..

Three members of the Pashman Stein firm, the same counsel which represents N.V.E. in the District of New Jersey, moved for pro hac admission October 18, 2016, a week before the deadline for filing complaints to declare the debt non-dischargeable. That firm had tried to attend the meeting with creditors August 29, 2016. However, the representative of the firm appeared after the meeting had ended.

Notice to counsel constitutes notice to N.V.E., Rosenberry

v. Evans, 48 A.3d 1265, 1272-73 (Pa.Super. 2012). The motion should be denied. N.V.E. has no valid excuse for ignoring the deadline in the notice to creditors.

If N.V.E. needed more time to file its complaint to declare the debt non-dischargeable, it should have moved under Rule 9006 (b)(1) for an extension of time before the October 28 deadline had passed. It was in a position to do so as Er(dely had already appeared and counsel from Pashman Stein were already involved and had filed a motion. One might think that NVE would have paid more attention to the deadline because it had a $31,000,000 claim against Palmeroni. We note parenthetically that, as counsel knew on April 18th and concealed from this Court, the $31,000,000 represents treble damages for N.V.E.'s RICO claim, dismissed by the District Court in February 2017.

At oral argument, Mr. Samaro suggested that perhaps N.V.E. had not filed a an adversary complaint because of failures of communication and coordination with Ederly. However review of the Pashman Stein web site reveals that one of their partners, the head of the litigation department, one Sean Mack, "provides advice to firm clients on bankruptcy and insolvency related issues and represents creditors in bankruptcy proceedings." See the attachment to this brief.

2

## PALMERONI WAS NOT A FIDUCIARY
## WITHIN 11 U.S.C. §523(a)(4).

N.V.E. wants to file an adversary complaint charging that the debt claimed to be owned by Palmeroni is non-dischargeable under 11 U.S.C. §523(a)(4). That section declares non-dischargeable debts incurred by a fiduciary which constitute fraud such as theft or embezzlement. Palmeroni was the national sales manager of N.V.E.. N.V.E. does not claim that he stole or embezzled. He was not charged with embezzling any money; he handled no cash. His refusal to carry bags of cash to N.V.E. while it was in bankruptcy is one of the bases for his counterclaim for wrongful discharge. Palmeroni generated sales and he saw that customers were satisfied.

Even if Palmeroni were a fiduciary under state law, he is not a fiduciary within the meaning of 11 U.S.C. §523(a)(4). The definition of a fiduciary within the statute is governed by federal law, not state law. It encompasses people who are appointed as executors, trustees, administrators - somebody from whom a court might ordinarily seek a surety bond. A mere employee - even a National Sales Manager - does not rise to the level of a fiduciary. Thus, even if the court granted N.V.E. permission to file an adversary complaint, it would have to dismiss the adversary complaint for failure to state a cause of action. Librandi v. Librandi, 183 B.R. 379 (M.D.Ps. 1995),

3

<u>Villas at Bailey Springs Homeowners Association, Inc. v. LaRic-</u>
<u>ci</u>, 2011 WL 4591962 at *2 (M.D.Pa. 2011), <u>In re Schaefer</u>, 2017 WL
377941 at *3 (Bcy.M.D.Pa. 2017).

### III

### <u>BULLOCK</u> DOES NOT APPLY

The Court inquired about the impact of <u>Bullock v. Bankcham-</u>
<u>paign</u>, 133 S.Ct. 1754 (2013). If the court agrees that Palmeroni
was not a fiduciary under federal law, it need not analyze <u>Bul-</u>
<u>lock</u> for it presumes the existence of a fiduciary relationship.
That does not exist in this case.

    <u>Bullock</u> holds that the requisite conduct required by 11 U.S.
C. §523(a)(4) is conduct which would invoke criminal processes,
133 S.Ct at 1759-60. N.V.E. claims only that Palmeroni took
advantage of a corporate opportunity, an allegation disputed by
Palmeroni who claims that everything he did was authorized by
N.V.E. The requisite state of mind does not exist.

### IV

### PALMERONI HAS NOT ACTED IN BAD FAITH.

    NVE claimed that Palmeroni has acted in bad faith, basing
this charge on his gambling income over the past four years.
There is nothing improper or illegal about gambling. Palmeroni
reported all gambling earnings (and all gambling expenses) on his
income tax returns.

    We suspect that NVE is claiming that Palmeroni acted in bad

4

faith because it is NVE which has been sanctioned by the court for destruction of records not only in this case in New Jersey but in a similar case in federal court in Michigan. NVE has intentionally destroyed documents it knew were relevant and would be sought by adversary counsel. The District of New Jersey has criticized Pashman Stein for failing to send a litigation hold letter. See the attached opinion. This is another case of the pot calling the kettle black.

CONCLUSION

NVE has shown no excusable neglect. Palmeroni was not a fiduciary within the meaning of 11 U.S.C. §523(a)(4). For these reasons, the court should deny N.V.E.'s motion.

Respectfully submitted,

Date: May 2, 2017

Robert A. Vort

# EXHIBIT A

✉ info@pashmanstein.com      📞 201.488.8200  📠 201.488.5556  📍 Directions



ǁ **ABOUT** ⌄     ǁ **PRACTICE AREAS**     ǁ **PROFESSIONALS**     ǁ **NEWS** ⌄     ǁ **BLOGS** ⌄     🔍

# *Sean Mack*

## Member of the Firm



Sean Mack

*Member of the Firm*

📞 (201) 270-4919

✉

## Background

Sean Mack is the Co-Chair of the firm's Litigation Practice. Sean's practice focusses on complex disputes involving unfair business competition in its variety of forms. Sean regularly represents businesses, business owners and senior executives in lawsuits involving theft of corporate opportunities, theft of trade secrets, breaches of non-competition agreements and breaches of confidentiality and non-disclosure agreements and other unfair business practices. Clients often retain Sean when a joint business venture has gone awry or when they

smack@pashmanstein.com

⬇ vCard

## Practice Areas

- Alternative Dispute Resolution
- Appellate Advocacy
- Employment & Labor
- Intellectual Property
- Litigation
- Professional Misconduct and Attorney Ethics
- Shareholder/Disputes
- Special Retentions

## News

- Aug 26, 2016 - Pashman Stein Walder Hayden Announces Its 2017 Best Lawyers in America
- Mar 24, 2016 - Pashman Stein Lawyers Selected to the Super Lawyers and Rising Stars Lists
- Aug 17, 2015 - Best Lawyers in America® 2016 List Selects Four Pashman Stein Partners
- May 4, 2015 - Firm Mentioned on Fraud Claims Case Against
- Sep 13, 2011 - Sean Mack Named to New Jersey Law Journal's 40 Under 40

believe it is time to divorce their business partners. Many of his cases arise from complicated contractual and licensing disputes. He also has represented clients in trademark and trade dress infringement cases, and counterfeiting cases.

Sean is an experienced appellate advocate having presented appeals in several federal appellate courts and New Jersey's appellate division. He provides advice to firm clients on bankruptcy and insolvency related issues and represents creditors in bankruptcy proceedings. He also has represented several firm clients in contested probate proceedings.

Sean represents motor carriers in contract disputes and has provided advice on a variety of legal issues affecting motor carriers and the intermodal shipping industry.

## Representative Matters

- Successfully obtained the dismissal of all federal Lanham Act claims brought by a lighting company against its former contract manufacturer in a suit alleging that the manufacturer stole trade secrets and was improperly competing with the lighting company in breach of a confidentiality agreement. Then successfully obtained the dismissal of a follow-on lawsuit in state court on the basis of choice of law and personal jurisdiction defects. We then successfully pursued insurance coverage for all of the defense costs and expenses in federal court and on appeal before the Second Circuit Court of Appeals.
- Represented, a leading heart valve manufacturer in a patent licensing dispute involving rights to a minimally invasive method for repairing and replacing aortic heart valves (transcatheter aortic valve replacement therapy). The dispute focused on

whether only a particular patent or an entire family of patents to the revolutionary heart valve device and procedure had been licensed. Following an evidentiary hearing on our application for summary judgment, the matter was resolved through a confidential settlement.

- Successfully obtained a preliminary injunction prohibiting a former senior executive from competing against his former employer anywhere in the state of New Jersey and successfully prosecuted an order for sanctions when the former employee violated the injunction.

- Successfully defended a lawsuit brought by a sibling in a family owned business, who after 30 years of having no involvement with the business, demanded his share of the business and its profits. Despite the existence of an old stock ledger supporting the claim, the plaintiff was awarded zero dollars on his claims.

# Reported Decisions

*National Lighting Company, Inc. v. Bridge Metal Industries, LLC*, 601 F.Supp.2d 556 (S.D.N.Y. 2009)

*Strahan v. Strahan,* 402 N.J.Super. 298 (App. Div. 2008)

*Arnold v. Arnold*, 2007 WL 1146627 (N.J. App. Div. 2007)

*In re XO COMMUNICATIONS, INC.*, 323 B.R. 330 (Bankr. S.D.N.Y. 2005)

*Hawa Abdi Jama v. Esmor*, 343 F.Supp.2d 338 (D.N.J. 2004) and 334 F. Supp 2d 662 (D.N.J. 2004)

*Burns v. Anderson*, 123 Fed.Appx. 543 (4th Cir. 2004)

*In re GLOBO COMUNICACOES E PARTICIPACOES S.A.*, 317 B.R. 235 (S.D.N.Y. 2004)

*In re RSL Primecall, Inc.*, 2003 WL 22989669 (Bankr. S.D.N.Y. 2003)

# Presentations

"Restrictive Covenants in New York and New Jersey," *Lawline.com,* March 2012,

"Safeguarding Your Assets: Can You Protect Opportunities," *Financial Management Network*, November 2011

# Professional/Civic Activities

-Member, American Health Lawyers Association

-Member, New Jersey Bar Association

-Member, Bergen County Bar Association

-Former Member, District II-B Ethics Committee

# Bar/Court Admissions

New Jersey

New York

United States District Court, District of New Jersey

United States District Court, Southern District of New York

United States District Court, Eastern District of New York

United States District Court, Northern District of New York

United States Court of Appeals, Second Circuit

United States Court of Appeals, Fourth Circuit

United States Court of Appeals, Sixth Circuit

# Education

B.A., College of the Holy Cross, cum laude, 1995

J.D., Rutgers School of Law – Newark, with highest honors, Order of the Coif, 1999

# Accolades

- Included in the *New Jersey Rising Star* list for the editions of 2010-2013.
- Selected for the *New Jersey Super Lawyer* list for 2016 and 2017.
- Included in *New Jersey Law Journal's* "40 Under 40" list, for 2009 and 2011
- Ranked in the 2013-2017 editions of *Best Lawyers* list for his Commercial Litigation practice.

The Super Lawyers list is issued by Thomson Reuters. A description of the selection methodology can be found at http://www.superlawyers.com/about/selection_process.html.

The Rising Stars list is issued by Thomson Reuters. A description of the selection methodology can be found at http://www.superlawyers.com/about/selection_process.html.

New Jersey Law Journal's list is issued by the New Jersey Law Journal. A description of the selection methodology can be found at http://www.njlawjournal.com/id=1202432890579/40-Under-40

The Best Lawyers list is issued by Woodward/White, Inc. A description of the selection methodology can be found at https://www.bestlawyers.com/About/MethodologyBasic.aspx.

No aspect of this advertisement has been approved by the Supreme Court of New Jersey.

View All Profiles  →

## *About Us*

For over two decades, Pashman Stein proved that talent and commitment, not the size of a firm, are the decisive factors in client victories. Read more

  

## *Recent News*

› Colao and Julian to Head PSWH Monmouth County Office

› PSWH Lawyers Selected to the Super Lawyers and Rising Stars Lists

› Partner Brendan Walsh Joins Walk to Washington

› PSWH Prevails in the Defense of Former Port Authority Chairman David Samson

› Joe Hayden Included in Tom Barrett's New Jersey's Irish American Leaders: 2017 Edition

## *Contact Info*

*Hackensack Office*

Court Plaza South
21 Main Street, Suite 200
Hackensack, New Jersey 07601-7054

📞 201.488.8200
🖷 201.488.5556

*Red Bank Office*

28 Leroy Place
Red Bank, NJ 07701

*New York Office*

2900 Westchester Avenue
Suite 204
Purchase, NY 10577

📞 914.612.4092
🖷 914.612.4088

*Massachusetts Office*

71 Daggett Avenue
Vineyard Haven, MA 02568

**Mail to:** 455 State Road, PMB 271
Vineyard Haven, MA 02568

📞 201.315.0610

✉
info@pashmanstein.com



©2017 Google

📍 Directions

© 2016 Pashman Stein Walder Hayden P.C.

Disclaimer | Privacy Policy | Login

# EXHIBIT B

2011 WL 4407428
Only the Westlaw citation is currently available.
United States District Court,
D. New Jersey.

N.V.E., INC., Plaintiff,

v.

Jesus J. **PALMERONI**, et al., Defendants.

Civil Action No. 06–5455 (ES).
|
Sept. 21, 2011.

**Attorneys and Law Firms**

Ellen W. Smith, Aidan P. O'Connor, Pashman Stein, PC, Hackensack, NJ, for Plaintiff.

Robert J. Basil, Collier & Basil, P.C., New York, NY, Robert A. Vort, Hackensack, NJ, Stephen N. Dratch, Branford, CT, Stephen S Weinstein, A Professional Corporation, Morristown, NJ, for Defendants.

*OPINION*

ESTHER SALAS, District Judge.

*1 This matter comes before the Court on the motion of Defendant Jesus J. Palmeroni for spoliation sanctions, specifically seeking that (1) Plaintiff NVE, Inc. ("NVE") be excluded from offering evidence relating to the Smart World claims dated prior to 2005; (2) the jury may draw an adverse inference from NVE's non-production or destruction of evidence [1] ; (3) NVE provide Mr. Palmeroni with a full accounting of the destroyed and preserved documents and any relevant litigation hold letters; (4) NVE pay monetary sanctions in an unspecified amount; and (5) NVE pay Mr. Palmeroni's costs and attorneys' fees related to the filing of the instant motion. (Docket Entry No. 180, the "Motion"). The Court has considered the parties' submissions and the arguments and testimony elicited at the May 26, 2011 hearing. For the reasons set forth herein, Mr. Palmeroni's motion for sanctions is hereby **GRANTED IN PART** and **DENIED IN PART.**

[1]    Specifically, Mr. Palmeroni seeks the adverse inference related to the following documents: (1) the MACS accounting and financial system; (2) NVE's Smart World file from 2000 to 2004; (3) all intra office

emails; (4) all emails between NVE and its brokers, distributors and customers; (4) all correspondence between NVE and its brokers, distributors and customers; (5) all destroyed sales data relevant to determine Mr. Palmeroni's commissions in 2000, 2001. 2002 and 2005; (6) missing personnel files; (7) all customer records; and (8) commission and brokerage files relating to NVE brokers Wayne Dail, Harold Miller and Kris Sujack.

## I. BACKGROUND

### A. The Complaint

NVE manufactures, distributes and sells nutritional supplements. Docket Entry No. 199, First Amended Complaint dated May 18, 2011 ("Am.Complaint") at ¶ 7. NVE partners with brokers and distributors who sell NVE's products in exchange for commissions from NVE. *Id.* at ¶ 39. NVE employed Mr. Palmeroni first as a salesman and then later as the Vice President of Sales from 1999 to 2006. *Id.* at ¶ 37. During that time, NVE alleges that Mr. Palmeroni entered into secret arrangements with certain brokers who purchased NVE products for payments in exchange for assignment or manipulation of NVE accounts. *Id.* at ¶ 40. In addition to the kickback scheme, NVE alleges that Mr. Palmeroni and a fellow NVE employee, Vincent Rosarbo, formed an entity called Smart World, Inc. ("SW US"). *Id.* at ¶ 16. NVE already maintained a relationship with a European distributor located in the Netherlands, also called Smart World ("SW Netherlands"). *Id.* NVE contends that Mr. Palmeroni used SW U.S. to purchase NVE products at a lower international sales price without ever intending to export them and resold the products in the United States, thereby undercutting NVE's sales. *Id.*

### B. The Motion

On February 15, 2011, Mr. Palmeroni filed the Motion for NVE's alleged spoliation of evidence. Mr. Palmeroni seeks sanctions against NVE for failing to provide discovery because of NVE's alleged destruction of documents relevant to this litigation. In addition, Mr. Palmeroni also notes that NVE did not inform him of the destruction of any documents until November 2010 when NVE's counsel referenced the unavailability of the documents in a letter. *See* Docket Entry No. 180, Brief in Support of Motion to Sanction NVE for Spoliation of Evidence ("Moving Brief") at 2. Mr. Palmeroni contends that NVE was on notice of the claims in this litigation no later than

January 2006 (when NVE terminated Mr. Palmeroni) and therefore should have ensured that all relevant documents were safeguarded and produced. Moving Brief at 5–7. At minimum, Mr. Palmeroni argues that NVE was on notice to preserve documents relating to Mr. Palmeroni, customer and brokers Mr. Palmeroni interacted with, persons identified in the Rule 26 disclosures and other sales personnel. *Id.* at 9.

**\*2** Mr. Palmeroni's Motion blends missing documents (see footnote one) and sources it alleges that NVE destroyed. The sources at issue are the MACS accounting system, a storage room containing documents from the 1980s to 2004, Mr. Palmeroni's NVE issued laptop, the email server containing emails prior to 2004 and Mr. Palmeroni, Mr. Rosarbo and Mr. Palmeroni's assistants' email accounts (the "Email Accounts"). The Court will address the documents and sources below.

### C. Documents at Issue

As an initial matter, the Court notes that Mr. Palmeroni listed a number of categories of documents that he alleges are either missing and/or NVE destroyed. Many of these categories overlap and are only vaguely described in Mr. Palmeroni's submissions. During oral argument, the Court discovered that many categories of documents are not ripe for a sanctions motion but instead should be dealt with through a motion to compel. Specifically, the Court believes that many of the so-called missing documents were not destroyed, but instead never existed in NVE's files. For example, Mr. Palmeroni took issue with the documents produced from his personnel file, however, the Court is convinced that NVE produced what it maintained in the regular course of business. Merely because a party is displeased with the documents produced does not mean that spoliation sanctions are warranted.

Due to the confusion surrounding whether the missing documents have been destroyed or in fact never existed, the Court will instead address the request for sanctions relating to the sources of documents that NVE allegedly destroyed: (1) the MACS computer system containing accounting and financial data prior to 2005; (2) the paper files destroyed by NVE's receptionist in 2009 as directed by NVE's Chief Financial Officer, Erling Jensen; (3) the Email Accounts; (4) Mr. Palmeroni's hard drive in his NVE issued laptop; and (5) the email server containing emails prior to 2004. For the remaining categories of documents that Mr. Palmeroni claims NVE has not

produced, Mr. Palmeroni is directed to file a motion to compel within thirty days of the issuance of this opinion. After resolving the motion to compel, the Court will then consider whether any documents found to be missing may be the subject of another spoliation motion.

### i. MACS System

Prior to November 1, 2005, NVE utilized the MACS System, at minimum, as an invoicing system. Beyond data entry and invoices, the parties cannot agree on a description of the records maintained in the MACS system. NVE states that the MACs system contained billing, shipping and customer information from mail orders and did not contain accounting or financial documents. Transcript dated May 26, 2011 ("Transcript") at 20:4 to 12, 38:18 to 39:16, 41:8 to 11. Mr. Palmeroni believes that the MACS system maintained other records, including notes made by sales people and evidence of cash sales to support his counterclaim. Transcript at 89:9 to 19. On November 1, 2005, NVE upgraded to a system called MAS200, which tracks orders, invoices, accounting, financial and General Ledger data. By early 2006, after Mr. Palmeroni's termination date, NVE completed the transition thereby rendering the MACS system outdated. Docket Entry No. 186, Opposition to Motion for Sanctions ("NVE Opp.") at 3. While NVE still possesses the MACS system, it claims the data on it is inaccessible. *Id.*

### ii. Storage Room Documents

**\*3** NVE claims that, in 2009, it disposed of documents dating from the 1980s to 2004 in the ordinary course of business (the "Storage Room Documents"). NVE Opp. at 5. These documents included accounts payable, accounts receivable, time cards, purchase orders, commission statements, catalogs, correspondence files, marketing and promotional literature and other materials. NVE does not have a written document retention policy but alleges that Mr. Jensen confirmed that these documents did not relate to the litigation with Mr. Palmeroni. *Id.* NVE also claims that in 2009 it was not aware of the Smart World claims so it did not insure that documents related to Smart World were set aside. *Id.* at 6. In fact, in 2006, NVE claims that it only needed to search for documents related to the kickback scheme between Palmeroni and Defendants Ronald Sumicek and Sunbelt Marketing.

Through Mr. Jensen's testimony, the Court determined that he ordered a receptionist to shred documents dated from the 1980s to 2004 to "clean up" the NVE offices. Transcript at 121:16 to 24, 137: 2 to 7. NVE concedes that Mr. Jensen did not oversee the actual shredding and that he did not ask outside counsel to review the documents prior to his decision to shred them. *Id.* at 122:4 to 123: 7.

### iii. Email server, Email Accounts and Palmeroni Laptop

In NVE's opposition to this motion, NVE first notified Mr. Palmeroni that the hard drive on his NVE laptop, in NVE's possession, had been deleted. NVE also notified Mr. Palmeroni that his, Mr. Rosarbo and Mr. Palmeroni's assistants's email accounts had been deleted from NVE's email server. NVE Opp. at 12. NVE states that it is in possession of the hard drive and server but does not state who erased the hard drive or accounts on the server. Thereafter, at oral argument, NVE informed the Court that not only were the four email accounts deleted, but that NVE does not have access to any emails prior to 2004. Transcript at 37:9 to 11; 103:2 to 13.

Sometime prior to Mr. Palmeroni's termination, NVE upgraded its email server. Transcript at 103:2 to 13. The current system administrator, Jerry Yang, believed that all of the emails from the old server had been transferred to the current server. Transcript at 37:9 to 15; 103:9 to 13. During discovery, however, Mr. Yang discovered that he did not have access to any emails prior to 2004. When this happened, Mr. Yang attempted to power up the old email server, but was unsuccessful. Transcript at 70:13 to 21, 103: 2 to 24. To date, NVE has been unable to access any of the emails on the old server.

As for the email accounts, NVE did not know who deleted the Email Accounts or when it happened. Declaration of Philip Yang at ¶¶ 9 to 14. NVE has been unable to produce any emails, however, at oral argument, NVE's counsel stated that it had recovered some of Mr. Palmeroni's emails and would be producing them. Transcript at 35:34 to 36:2.

Finally, at oral argument, NVE also represented that it hired a forensic computer expert who was able to recover the information deleted off of Mr. Palmeroni's NVE laptop. *Id.* NVE also represented that it was undergoing a privilege review of the documents and that it will produce the documents upon completion.

## II. DISCUSSION

*4 The Motion, like the facts set forth in Judge Scheindlin's recent opinion, *Pension Committee of the Univ. Of Montreal Pension Plan v. Banc of Am. Secs., LLC,* 685 F.Supp.2d 456, 463 (S.D.N.Y.2010), does not involve a litigant purposefully destroying evidence. Instead, the Court is faced with NVE's failure to institute the required litigation holds and counsel's failure to properly oversee the discovery process. Resulting from this failure, NVE has been unable to clearly articulate the steps taken to preserve, search and produce the requested discovery. As a result, Mr. Palmeroni is prejudiced in his efforts to both defend the claims against him and prosecute his counterclaims.

Spoliation of evidence is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Mosaid Tech., Inc. v. Samsung Elec. Co., Ltd.,* 348 F.Supp.2d 332, 335 (D.N.J.2004) (internal citation omitted). When spoliation occurs, courts may impose sanctions on the offending party because a litigant is "under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." *Scott v. IBM Corp.,* 196 F.R.D. 233, 249 (D.N.J.2000). The range of potential spoliation sanctions includes dismissal of the action, exclusion of evidence, an instruction to the finder of fact allowing for an adverse inference, attorney's fees, and costs. *Mosaid,* 348 F.Supp.2d at 335. This Court has authority to impose such sanctions pursuant to the Federal Rules of Civil Procedure and this Court's inherent authority. *Scott,* 196 F.R.D. at 247–48. The imposition of sanctions is "appropriate when there is evidence that a party's spoliation of evidence threatens the integrity of this Court." *Mosaid,* 348 F.Supp.2d at 335.

First, the Court will consider NVE's culpability. Next, the Court will determine whether NVE violated the duty to preserve. If so, the Court will then determine which spoliation sanction is appropriate.

### A. Culpability

As the first step in the analysis, the Court will consider whether NVE's conduct was negligent, grossly negligent or willful. Courts have defined negligence as "conduct which falls below the standard established by law for the protection of others against risk of harm." *Pension*

*Committee,* 685 F.Supp.2d at 464 (internal citations omitted). In the discovery context, the court must look to prior judicial decisions and its own experiences to determine whether a party has met its obligations. *Id.* Gross negligence goes beyond negligence, by degree and "has been described as a failure to exercise even the care which a careless person would use." *Id.* Finally, to be willful, a party must intentionally act "in disregard of a known or obvious risk that was so great as to make it highly probably that harm would follow, and which thus is usually accompanied by a concious indifference to the consequences." *Id.*

**\*5** Here, the Court finds that NVE acted with gross negligence in both failure to preserve evidence and collection and review. As to preservation, NVE's counsel failed to institute a litigation hold. *See Pension Committee,* 685 F.Supp.2d at 465 ("failure to issue a written litigation hold constitutes gross negligence ..."); Transcript at 31:25 to 32:9. While Mr. Jensen testified that he might remember that prior counsel sent an email around telling NVE staff not to destroy documents, this Court has no proof of the content of this communication nor can the Court be convinced that Mr. Jensen's memory is correct. Moreover, NVE's counsel, Pashman Stein, hired in or around May 2006, admits that it failed to issue a written litigation hold. *Id.*

As to collection and review, NVE's Chief Financial Officer, Mr. Jensen, who is not a licensed attorney, has been responsible for not only gathering the documents to produce in discovery but making relevance calls without the assistance of counsel. *Id.* at 128:5 to 131:2. The Court was extremely surprised to learn that Mr. Jensen has received no assistance from counsel, nor has any counsel from Pashman Stein visited NVE over the five years this litigation has been pending to review any documents. *Id.* at 146:14 to 148:12. The Court cannot fathom how NVE can be confident that it has produced all relevant information and that no relevant information has been destroyed when there has not been a single attorney reviewing the documents to confirm this fact is true. As such, the Court finds that NVE was grossly negligent in both its preservation, review and collection efforts.

### B. Duty to Preserve

In order to ascertain whether spoliation sanctions are appropriate, it must next be determined whether NVE's duty to preserve evidence had been triggered at the time

of the destruction of materials. *Kounelis v. Sherrer,* 529 F.Supp.2d 503, 518 (D.N.J.2008). A duty to preserve is an "affirmative obligation," which arises "when the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable and the party in possession of the evidence can foresee the harm or prejudice that would be caused to the party seeking the evidence if the evidence were to be discarded." *Kounelis,* 529 F.Supp.2d at 518. "While a litigant is under no duty to keep or retain every document in its possession, even in advance of litigation, it is under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." *Scott,* 196 F.R.D. at 249.

In this case, NVE's duty to preserve arose, at the latest, in January 2006, when NVE terminated M ·. Palmeroni's employment. *See Mosaid,* 348 F.Supp.2d at 336. At that time, the parties agree that litigation was imminent, but disagree as to the scope of NVE's duty. NVE Opp. at 6. The Court finds that, as of January 2006, NVE had a duty to preserve evidence related to Mr. Palmeroni's employment and subsequent termination. The Court also finds that NVE failed to adequately preserve the MACS system, the storage room documents and the Email Accounts, all of which were destroyed after Mr. Palmeroni's termination in January 2006. The Court does not find that NVE had a duty to preserve the email server because the conversion occurred prior to January 2006. The Court also finds that because NVE's forensic expert was able to recover the data on Mr. Palmeroni's laptop, NVE has cured any violation of its duty to preserve this evidence.

**\*6** Having determined that NVE violated its duty to preserve evidence relating to the MACS system, the storage room documents, and the Email Accounts, the Court now turns to selecting an appropriate sanction.

### C. Sanctions

Once the Court determines that there is a duty to preserve, the Court can consider the following types of sanctions: (1) dismissal of a claim or granting summary judgment in favor of a prejudiced party; (2) suppression of evidence; (3) an adverse inference; (4) fines; and (5) attorneys' fees and costs. *Mosaid,* 348 F.Supp.2d at 335. The key considerations in determining the proper sanction are: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered

by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party...." *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir.1994). Here, Mr. Palmeroni is seeking (1) exclusion of evidence relating to the Smart World claims dated prior to 2005; (2) an adverse inference from NVE's non-production or destruction of evidence[2]; (3) a full accounting of the destroyed and preserved documents and any relevant litigation hold letters; and (4) monetary sanctions, including costs and attorneys' fees related to the filing of the instant motion. NVE has already stated that it cannot provide either a full accounting of the destroyed documents or any litigation hold letters so the Court need not consider that request but will take the fact into account in the below analysis.

[2]   Specifically, Mr. Palmeroni seeks the adverse inference related to the following documents: (1) the MACS accounting and financial system; (2) NVE's Smart World file from 2000 to 2004; (3) all intra office emails; (4) all emails between NVE and its brokers, distributors and customers; (4) all correspondence between NVE and its brokers, distributors and customers; (5) all destroyed sales data relevant to determine Mr. Palmeroni's commissions in 2000, 2001, 2002 and 2005; (6) missing personnel files; (7) all customer records; and (8) commission and brokerage files relating to NVE brokers Wayne Dail, Harold Miller and Kris Sujack.

### i. Preclusion of Evidence

The court must consider that dismissal and suppression of evidence are two of the most drastic sanctions and should only be imposed in the most extraordinary circumstances. *Scott*, 196 F.R.D. at 248. In that regard, the Court should only exercise its power to order such sanctions where "a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons ..." *Chambers v. NASCO*, 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Here, the Court declines to order such a drastic sanction. Mr. Palmeroni has failed to demonstrate that NVE acted in bad faith and the Court has already found that NVE's culpability rises to the level of gross negligence. As such, Mr. Palmeroni's request for preclusion of evidence is denied.

### ii. Adverse Inference

An adverse inference, or the spoliation inference, is regarded as a "far lesser sanction," and is intended to

level the playing field between the parties. *Mosaid*, 348 F.Supp.2d at 335, 338. The spoliation inference informs the trier of fact that it may "receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir.1995) (internal citation omitted). Such a sanction should be imposed upon a finding that: (1) the evidence in question was within the party's control; (2) "it must appear that there has been actual suppression or withholding of the evidence"; (3) the evidence destroyed was relevant to the claims or defenses; and (4) it was reasonably foreseeable that the evidence would be discoverable in litigation. *Mosaid*, 348 F.Supp.2d at 336 (internal citations omitted). Here, the Court finds that NVE's actions warrant a spoliation inference as to the MACS System, the storage room documents and the Email Accounts.

**\*7** There is very little dispute concerning the first factor. At all relevant times, NVE had custody, possession and control over the MACS system, the storage room documents and the Email Accounts. The Court notes that NVE claims that the unauthorized deletion of the Email Accounts occurred outside of its control. *See* Opp. Brief at 20, n. 1. NVE, however, has not set forth any credible evidence that the Email Accounts were out of NVE's control and admits that its Systems Administrator, an NVE employee, had full responsibility for the Email Accounts. Declaration of Philip Yang at ¶ 14.

As to the second factor, district courts within the Third Circuit are split regarding the requisite culpability of a purported spoliator under the "actual suppression" requirement to trigger an adverse inference.[3] Some district courts "have found that an adverse inference arises when spoliation 'was intentional, and indicates fraud and a desire to suppress the truth, and ... not ... where the destruction was a matter of routine with no fraudulent intent.' " *Arteria Property Pty Ltd. v. Universal Funding V.T.O.*, No. 05–4896, 2008 U.S. Dist. LEXIS 77199, at * 12, 2008 WL 4513696 (D.N.J. Oct. 1, 2008) (citation omitted). Other courts have found that intentional conduct must be found before giving an adverse inference instruction. *Veloso v. Western Bedding Supply Co.*, 281 F.Supp.2d 743, 746–49 (D.N.J.2003); *Costello v. City of Brigantine*, No. 99–4072, 2001 WL 732402, at *26 (D.N.J. Jun.28, 2001). Still, some courts have held that the adverse inference is justified where

evidence has been negligently destroyed. *Mosaid*, 348 F.Supp.2d at 338; *Scott*, 196 F.R.D. at 248–49 (finding that spoliation sanctions might be appropriate where there was nothing to indicate documents were intentionally destroyed).

3    There is also an intra-circuit split as to the necessary culpability of a spoliator to trigger the adverse inference. *Compare Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir.1995) ("[w]e reject the argument that bad faith is an essential element of the spoliation rule") *with Henning v. Union Pacific R. Corp.*, 530 F.3d 1206, 1220 (10th Cir.2008) (requiring evidence of bad faith or intentional destruction to warrant an adverse inference instruction).

The Court need not determine whether the destruction of documents was intentional or negligent, as an adverse inference is warranted in this case under either standard. NVE was aware that litigation was imminent as early as January 2006, yet did nothing to back-up the MACS system or the Email Accounts. No litigation hold was ever issued. NVE did not have a document retention policy in place. Moreover, Mr. Jensen testified that he intentionally ordered NVE's receptionist to shred the Storage Room Documents to "clean up the offices." Transcript at 121:16 to 24; 137:2 to 7. No attorneys reviewed the documents prior to the destruction nor did Mr. Jensen supervise the receptionist to confirm what she was shredding. *Id.* at 122:4 to 123:7. In fact, no attorney has ever searched or reviewed any of the NVE documents. *Id.* at 146:14 to 148:12. Because of this, there is no inventory of what documents NVE destroyed. Therefore, the second prong is satisfied.

As to the third and fourth prongs, although there is no inventory of the destroyed documents on either the MACS system, in the storage room or in the Email Accounts, the Court cannot imagine that NVE did not delete any relevant information as the result of these purges. First, although there is a dispute about what was contained on the MACS system, at minimum, the parties agree that it contained evidence of customer orders and subsequent invoices which are relevant to the claims and counterclaims in this action. Moreover, the Court cannot accept Mr. Jensen's sworn testimony about what was contained in the MACS system as he stated that he never actually used the system. Transcript at 133:14 to 134:15. There is no dispute that the Email Accounts contained relevant information. Finally, the storage room

contained, at minimum, accounts payable, accounts receivable, time cards, purchase orders, commission statements, catalogs, correspondence files, marketing and promotional literature and other materials. In light of the allegations in the complaint and the counterclaims, the Court finds that, at minimum, the accounts payable, accounts receivable, purchase orders and commission statements are relevant to this litigation. Therefore, the Court finds that factor three is satisfied, as Mr. Palmeroni has made a *prima facie* showing of relevance. Similarly, the Court finds that factor four is established, as it would be reasonably foreseeable that the relevant documents would later be sought in discovery because suit had already been filed at the time of destruction.

*8 Because all four prongs have been met, this Court finds that an adverse inference is appropriate in this case with respect to all materials deleted or destroyed following the commencement of this lawsuit. The Court is mindful that it must exercise its powers to impose this sanction with restraint and discretion. *Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir.1994). Based on the evidence presented by Mr. Palemeroni, as well as Mr. Jensen's testimony, the Court finds that an "adequate factual predicate" exists for the imposition of sanctions. *Id.*

### iii. Attorney's Fees and Costs

Mr. Palmeroni also seeks an award of attorney's fees and costs associated with identifying the destroyed evidence and the filing of this motion. In spoliation cases, monetary sanctions are used to compensate a party for "the time and effort it was forced to expend in an effort to obtain discovery" to which it was otherwise entitled. *Mosaid*, 348 F.Supp.2d at 339.

While the Court agrees that monetary sanctions are appropriate in this case, Mr. Palmeroni has failed to provide the Court with evidence of the expenses incurred. Therefore, Mr. Palmeroni shall submit an affidavit setting forth such expenses within fourteen (14) days of the date herein. NVE's response shall be due fourteen (14) days thereafter.

### III. CONCLUSION

For the reasons set forth above, Mr. Palmeroni's requests for evidence exclusion is **DENIED**. Mr. Palmeroni's request for a spoliation inference is **GRANTED**. An

adverse inference should be provided to the jury at an appropriate time. NVE shall also pay monetary sanctions, the amount of which will be determined pursuant to the instructions set forth herein. The Court will issue an appropriate Order.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 4407428

End of Document © 2017 Thomson Reuters. No claim to original U.S. Government Works.